**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MONEY CENTERS OF AMERICA, INC., | ) | |
| | ) | Case No. 14-10603 (CSS) |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CHECK HOLDINGS, LLC, | ) | |
| | ) | Case No. 14-_____ (___) |
| Debtor. | ) | |
| | ) | |

**DECLARATION OF CHAPTER 11 TRUSTEE OF MONEY**
**CENTERS OF AMERICA, INC. IN SUPPORT OF CHAPTER 11**
**PETITION AND FIRST DAY MOTIONS OF CHECK HOLDINGS, LLC**

Michael St. Patrick Baxter, pursuant to 28 U.S.C. § 1746, declares as follows:

1.      I am the Chapter 11 Trustee for debtor Money Centers of America, Inc.

("MCA"), which is a chapter 11 debtor in a case pending before the United States Bankruptcy

Court for the District of Delaware ("Court"), assigned Case No. 14-10603 (CSS).  MCA is the

sole member of Check Holdings, LLC ("Check Holdings" and together with MCA, "Debtors").

2.      On April 23, 2014, the Court directed the appointment of a trustee for MCA.[1]  On

April 28, 2014, the Court approved my appointment as the Chapter 11 Trustee for MCA.[2]

---

[1]      *See* Order Granting the Motions of the United States Trustee for an Order Directing the Appointment of a Trustee Under 11 U.S.C. § 1104 or, in the Alternative Directing the Appointment of an Examiner; the Motion of the Corporate Commission of the Mille Lacs Band of Ojibwe Indians For Entry of an Order Directing the Appointment of a Trustee Under 11 U.S.C. § 1104 or, Alternatively, Conversion to Chapter 7 Under 11 U.S.C. § 1112(b); and, Joinder of the Ho Chunk Nation in the Motion of the Mille Lacs Band of Ojibwe Indians For Entry of an Order Directing the Appointment of a Trustee Under 11 U.S.C. § 1104 or, Alternative, Conversion to Chapter 7 Under 11 U.S.C. § 1112(b) [Docket No. 85] ("Trustee Order").

[2]      *See* Order Approving The Appointment Of Michael St. Patrick Baxter As Chapter 11 Trustee [Docket No. 89] ("Appointment Order" and together with Trustee Order, "Trustee Appointment Orders").

Pursuant to the Trustee Order, MCA's interest as the sole member of Check Holdings vested in me as Chapter 11 Trustee for MCA, and I was granted control of the membership interest and all rights thereto.

3.     I am authorized to submit this declaration ("Declaration") on behalf of Check Holdings. All facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or upon information provided to me by individuals retained by Check Holdings or professionals working with me or under my direction, and reflect my opinions based on my knowledge, experience, and information obtained concerning Check Holdings and its operations. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

## BACKGROUND

4.     On March 21, 2014, MCA filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as amended ("Bankruptcy Code").

5.     On the date hereof, Check Holdings filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6.     No official committee of unsecured creditors has been appointed in these chapter 11 cases.

### A.     The Debtors

7.     MCA is a Delaware corporation that was formed on October 10, 1997, and whose principal office is located at 601 S. Henderson Rd., Suite 153, King of Prussia, Pennsylvania.

8.     Check Holdings is a Delaware limited liability company that was formed on December 23, 2011, and whose principal office is located at 601 S. Henderson Rd., Suite 153, King of Prussia, Pennsylvania.

52979/0001-10639882v2

9.      The Debtors provide financial technology and payments services for land-based gaming operators in the United States, offering ATM, check cashing, credit and debit card cash advances, ticket redemption kiosks, transaction management systems, staffed booths, and related services for casino operators (collectively, "Financial Services Systems"). The Debtors have operated in California, Louisiana, Oklahoma, Wisconsin, Minnesota, New York, New Mexico, and Nevada.

**B.      Mille Lacs Judgment and Potential Receivership**

10.     On April 17, 2009, MCA entered into a Financial Services/On Switch Agreement ("Mille Lacs Agreement") with the Corporate Commission of the Mille Lacs Band of Ojibwe Indians ("Mille Lacs"), by which MCA agreed to provide check-cashing and cash-access services to patrons of the casinos operated by Mille Lacs. Mille Lacs agreed to pay fees to MCA in exchange for these services. Mille Lacs also agreed to advance MCA cash from the vaults located on-site at its casinos on a near daily-basis so that MCA could operate the cash-access services. In the ensuing litigation, Mille Lacs claimed that MCA breached its contract by failing to timely remit payment of amounts due under the Mille Lacs Agreement.

11.     After protracted litigation, on December 2, 2013, the United States District Court for the District of Minnesota ("Minnesota Court") entered final judgment on Mille Lacs' breach-of-contract claim against MCA in the amount of $5,623,690.83, plus prejudgment interest at the rate of 10% per year ("Judgment"). I understand that Mille Lacs initiated enforcement actions in four states: New Mexico, Wisconsin, Minnesota, and Pennsylvania.

12.     MCA appealed the Judgment, but the Minnesota Court denied MCA's motion to stay collection efforts pending the appeal. On March 17, 2014, Mille Lacs filed a motion in the Minnesota Court seeking the appointment of a receiver for MCA's assets. MCA's primary asset

is its 100% interest in Check Holdings.  Prior to the Minnesota Court ruling on such motion, MCA filed its chapter 11 petition.

C.    **Appointment of Chapter 11 Trustee**

13.    On April 1, 2014, Mille Lacs sought the appointment of a trustee or, alternatively, the conversion of MCA's chapter 11 case to a case under chapter 7.[3]  On April 4, 2014, the Ho-Chunk Nation joined Mille Lacs' motion.[4]  On April 9, 2014, the Office of the United States Trustee sought the appointment of a trustee or in the alternative the appointment of an examiner.[5]

14.    As noted above, on April 23, 2014, the Court entered the Trustee Order, and on April 28, 2014, the Court entered the Appointment Order, approving my appointment as the Chapter 11 Trustee for MCA.

15.    In the three weeks since my appointment, I have focused on establishing appropriate operating safeguards to preserve the Debtors' assets for the protection of all parties in interest (including the establishment of new bank accounts under my control as Chapter 11 Trustee for MCA), investigating whether the Debtors generated sufficient cash flow to maintain viable operations, and determining whether a sale of Check Holdings as a going-concern was feasible.

16.    As a result of my preliminary investigation of the business operations of the Debtors, I learned that MCA and Check Holdings have been operating as a single business

---

[3]    *See* Motion of the Corporate Commission of the Mille Lacs Band of Ojibwe Indians for Entry of an Order Directing The Appointment of a Trustee Under 11 U.S.C. § 1104 or, Alternatively, Conversion to Chapter 7 Under 11 U.S.C. Section 1112(b) [Docket No. 16].

[4]    *See* Joinder of the Ho Chunk Nation in the Motion of the Corporate Commission of the Mille Lacs Band of Ojibwe Indians for Entry of an Order Directing The Appointment of a Trustee Under 11 U.S.C. § 1104 or, Alternatively, Conversion to Chapter 7 Under 11 U.S.C. § 1112(b) [Docket No. 33].

[5]    *See* Motion of the United States Trustee for an Order Directing the Appointment of a Trustee Under 11 U.S.C. § 1104 or, in the Alternative, Directing the Appointment of an Examiner [Docket No. 57].

organization, sharing office space, employees and the Financial Services Systems that were offered to their customers in the gaming industry. I also learned that the Debtors were in significant arrears under many of their financial services agreements with gaming operators (making assignment of those agreements difficult, if not impossible). After consultation with counsel, a forensic accountant, the Office of the United States Trustee, and an investment banker previously involved in an effort to sell Check Holdings, I concluded that a going-concern sale of Check Holdings was not feasible and that a liquidation of the Debtors in chapter 11 was in the best interests of the estates and creditors. Consequently, Check Holdings ceased operations as of the close of business on May 16, 2014, and filed for chapter 11 relief on May 23, 2014.

## FIRST DAY MOTIONS

17. In accordance with the corporate resolution of MCA, the parent and sole member of Check Holdings, filed simultaneously with Check Holdings' Petition, I have been authorized to submit this Declaration in support of the motions (each, a "First Day Motion" and, collectively, "First Day Motions") which have been filed with the Court in connection with the commencement of this chapter 11 case and to assist the Court and other parties in interest in understanding the circumstances that precipitated the commencement of this chapter 11 case. Any capitalized term not expressly defined herein shall have the meaning ascribed to such term in the relevant First Day Motion.

18. To enable Check Holdings to effectively transition to chapter 11 and to minimize the effects of the chapter 11 filing, Check Holdings has filed two First-Day Motions. Only relief essential to allow Check Holdings to transition to chapter 11 is sought in the First Day Motions. This relief is necessary to achieve an orderly wind-down of the Debtors.

52979/0001-10639882v2

**A.  Motion Of Michael St. Patrick Baxter, As Chapter 11 For Money Centers Of America, Inc., For An Order Directing That The Trustee Appointment Orders Be Made Applicable To Check Holdings, LLC ("Appointment Extension Motion")**

19.    I seek to extend the Trustee Appointment Orders so that my appointment as Chapter 11 Trustee for MCA is made applicable to Check Holdings.

20.    Pursuant to the Trustee Appointment Orders, MCA's interest as the sole member of Check Holdings vested in me as Chapter 11 Trustee for MCA, and I was granted control of the membership interest and all related powers.  Thus, I am authorized to act on behalf of MCA as the sole member of Check Holdings.  In administering the estate of MCA, I have been effectively administering the business and assets of Check Holdings because Check Holdings was an operating asset of MCA's estate.

21.    As discussed above, MCA and Check Holdings have been operating as a single business organization, sharing office space, employees and the Financial Services Systems that were offered to their customers in the gaming industry.  Because the Debtors are so interconnected, extension of the Trustee Appointment Orders to Check Holdings is appropriate and in the best interests of their estates and creditors.  In addition, entry of an order directing that the Trustee Appointment Orders be made applicable to Check Holdings will allow me to oversee and administer both estates (for which we seek joint administration) and to deal with creditors and other parties in interest in the same capacity.  It also will promote efficiency by avoiding the need for duplicative notices, motions, applications, and orders to be filed in these chapter 11 cases.  I consulted with the Office of the United States Trustee prior to seeking this relief.

**B.  Motion of Michael St. Patrick Baxter as Chapter 11 Trustee of Money Centers of America, Inc., for an Order Directing Joint Administration of Related Chapter 11 Cases ("Joint Administration Motion")**

22.    I seek to consolidate the Debtors' chapter 11 cases for procedural purposes only. The joint administration of the Debtors' cases is warranted because:  (a) the Debtors' financial

affairs and business operations are closely related and intertwined; (b) joint administration will ease the administrative burden for the Court, the Debtors and interested parties; and (c) joint administration will eliminate the unnecessary costs that would be incurred by multiple duplicative filings in each case.

23.     Many of the motions, hearings, and orders that will arise in these cases will jointly affect MCA and Check Holdings.  By jointly administering the cases, the Debtors will be able to reduce fees and costs and ease the administrative burden of having to file multiple and duplicative documents.  The Debtors' creditors will benefit from the reduced costs as a result of joint administration.  Furthermore, the rights of the Debtors' respective creditors will not be adversely affected by the joint administration of these cases because the Joint Administration Motion requests only administrative consolidation of the estates.  I reserve the right to seek substantive consolidation of the two estates, if appropriate and necessary, at a later date.  The Court also will be relieved of the burden of entering duplicative orders and maintaining duplicative files.  Finally, supervision of the administrative aspects of the cases by the Office of the United States Trustee will be simplified.

## CONCLUSION

For the reasons stated herein and in each of the First Day Motions, the relief sought therein is in the best interests of MCA and Check Holdings, their creditors and their estates, and therefore, I respectfully request that the Proposed Orders be entered.

I declare under penalty of perjury of the laws of the United States of America that the foregoing statements are true and correct to the best of my knowledge, information and belief.

52979/0001-10639882v2

Dated: May 23, 2014
      Washington, D.C.

By: _____

Michael St. Patrick Baxter,
Chapter 11 Trustee for
Money Centers of America, Inc.